**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Li Fen Yao, | No. MC-25-00011-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Robert Chen, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Li Fen Yao's Motion to Compel Compliance with Subpoena. (Doc. 1). Plaintiff asks this Court to require Agasi Tax & Financial, PLLC ("Agasi"), a non-party to this litigation, to produce certain responsive financial documents and communications. (*Id.* at 1). For the reasons set forth below, Plaintiff's motion is granted.

## BACKGROUND

The pending motion seeks enforcement of a subpoena issued by the United States District Court for the District of Maryland in a matter pending there—*Yao v. Chen*, No. 8:23-cv-0889 (D. Md. 2023) (the "Maryland Action").[1]  (Doc. 2 at 7; *see also* Doc. 1 at 4-12).

### I.     The Maryland Action

Plaintiff, on behalf of the Estate of her husband Sam Chen ("Sam"), alleges that

---

[1] The Maryland Action has been consolidated with *Chen v. Chen*, No. 24-cv-3628 (D. Md. 2024). Citations to documents from the consolidated docket of *Yao v. Chen* and *Chen v. Chen*, on which *Yao v. Chen* is the lead case, will be formatted as follows: Md. Action, ECF No. 100 at 14.

Defendants Robert Chen[2] ("Robert"), Otter Audits LLC ("Otter Audits"), and RC Security LLC ("RC Security") (collectively, the "Maryland Defendants") engaged in a "brazen plot to steal the Estate's interest in . . . OtterSec LLC ('OtterSec')." (Doc. 1 at 14-15). OtterSec was a Wyoming limited liability company formed in 2022, with two members: Robert and Sam. (*Id.* at 15-16). Specifically, Plaintiff alleges that after Sam's death, Robert secretly formed two new companies in South Dakota—Defendants Otter Audits and RC Security— before unilaterally dissolving OtterSec. Robert then "misappropriated OtterSec's assets, employees, clients, opportunities, and other tangible and intangible property for his new companies," to the detriment of the Estate as the rightful owner of Sam's interest in OtterSec. (*Id.* at 15, 17).

Though Sam and Robert initially owned equal shares in OtterSec, Sam agreed to enter an Amended Operating Agreement, transferring 10% of his interest to Robert without knowing that Robert was attempting to sell his own interest in the company to another entity. (*Id.* at 18-23, 33). The Amended Operating Agreement further stated that OtterSec would dissolve automatically upon the death of a member. (*Id.* at 33). As such, when Sam passed away in July 2022, OtterSec should have dissolved. (*Id.*). Instead, a month after Sam's death, Robert unilaterally executed a Second Amended Operating Agreement, removing the provision about a member's death. (*Id.*). Two months after Sam's death, Robert dissolved OtterSec and sold its assets to his other companies, Otter Audits and RC Security. (*Id.* at 33, 36).

Plaintiff's pending claims against Robert in the Maryland Action are state law claims alleging (1) breach of fiduciary duty to Sam for amending the operating agreement to transfer 10% of Sam's interest in OtterSec to himself without notifying Sam that he was actively seeking to sell his own interest in the company, (2) fraud relating to that same transfer, and (3) breach of the Amended Operating Agreement. (*Id.* at 40-44); Md. Action, ECF No. 100 at 30-31, 36, 39-44. Plaintiff further seeks declaratory relief and equitable accounting from all Maryland Defendants. (Doc. 1 at 38-40, 45).

---

[2] Sam Chen and Robert Chen are not related. (Doc. 2 at 7).

## II.   The Subpoena

On November 6, 2024, Plaintiff served a subpoena on Agasi, a non-party, full-service accounting firm in Arizona with clients including Robert, OtterSec, Otter Audits, and RC Security.  (Doc. 2 at 7, 9; Doc. 5 at 2).  Plaintiff alleges that Agasi has information relevant to (i) the operations and dissolution of OtterSec, (ii) the transfer of assets by Robert from OtterSec to Otter Audits, RC Security, and a non-party Singaporean entity, Digital Asset Network Security PTE Ltd. ("DANS") (collectively, the "Successor Entities"), and (iii) the "commingling of assets between Robert and the Successor Entities."  (Doc. 2 at 7-8; Doc. 5 at 2).

On November 20, 2024, Agasi objected to the subpoena exclusively on grounds of Arizona law, asserting that the requests are unduly burdensome, overbroad, irrelevant, and barred by applicable privacy and privilege laws.  (Doc. 2 at 10-11, 74-90).  On December 10, 2024, counsel for the parties met and conferred.  (*Id.* at 11).  The following day, counsel exchanged emails about the results of their meet-and-confer, largely disagreeing on what they discussed.  (*Compare* Doc. 6 at 81-82, *with* Doc. 5-1 at 27-28).

After a pause in the meet and confer process so that Plaintiff could handle discovery disputes in the Maryland Action, Plaintiff's counsel emailed Agasi's counsel on April 1, 2025, asking whether Agasi would comply with the subpoena.  (Doc. 5-1 at 30).  Agasi's counsel responded on April 3, 2025, stating its objections and producing what it claims to be the only relevant, non-privileged document in its possession: "a single, three-page email chain . . . from 2023" which discusses Sam's social security number and address.  (Doc. 2 at 12; Doc. 5 at 3; Doc. 5-1 at 3; Doc. 6 at 80, 94-96).  Agasi's counsel did not provide a privilege log then, and indeed, would not do so until April 10, 2025.  (Doc. 5-1 at 3, 32-34).  Plaintiff filed her Motion to Compel on April 4, 2025.  (Doc. 1).

**DISCUSSION**

## I.   Legal Standard

Federal Rule of Civil Procedure 45(a)(1)(A)(iii) allows the district court in which an action is pending to command a nonparty to "produce designated documents,

- 3 -

electronically stored information, or tangible things in that [nonparty]'s possession, custody, or control." The nonparty may respond with written objections, including assertions of privilege. Fed. R. Civ. P. 45(d)(2)(B), (e)(2)(A).

If the nonparty does object, the party seeking production may, "[a]t any time, on notice to the" nonparty, "move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i). If the court issues such an order, it "must protect" nonparties "from significant expense resulting from compliance," ensuring that the party seeking production has "take[n] reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii).

When assessing a motion to compel under these circumstances, the district court must consider the appropriate scope of discovery under the nonparty subpoena. *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery." (citing *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 232 (9th Cir. 1979))). In comparison to discovery between parties, discovery involving nonparties is "more limited to protect [them] from harassment, inconvenience, or disclosure of confidential documents." *Id.* (citation omitted); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) (holding that non-parties are afforded "extra protection from the courts" (quoting *High Tech Med. Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995))).

Nonetheless, Rules 26 and 34 provide the definitions and standards applicable in the context of Rule 45. *See, e.g.*, *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257, 2019 WL 250429, at *2 (D. Ariz. Jan. 17, 2019) (citations omitted) ("[T]he test for 'relevance' in the context of Rule 45 subpoena to a non-party is no different than the test under Rules 26 and 34."). Rule 26(b) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense. The scope of discovery may be further limited by proper objections, including those based on privileges." Fed. R. Civ. P. 26(b)(5)(A), 34.

- 4 -

Relevance, though generally broadly construed, limits the scope of discovery based on the proportionality of the discovery sought to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Proportionality depends on "the importance of the issues . . . , the amount in controversy, . . . relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In the context of Rule 45, the party seeking to enforce "the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020).

Objections may further limit the scope of discovery but must be stated with "specificity." Fed. R. Civ. P. 34. In other words, boilerplate objections are insufficient. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). For example, if a nonparty objects to a discovery request for electronically stored information "because of undue burden or cost," it "must show that the information is not reasonably accessible." Fed. R. Civ. P. 26(b)(2)(B). In the context of nonparty subpoenas, the burden on the nonparty is "afford[ed] . . . special consideration," by weighing its burden "against the value of the information to the serving party," considering "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Aquastar*, 2019 WL 250429, at *3 (quoting *Soto*, 282 F.R.D. at 504). The party claiming that discovery is unduly burdensome "must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (citation omitted).

Similarly, to properly object and "withhold[] information otherwise discoverable" under the assertion of a privilege, a nonparty must (i) assert the privilege expressly and (ii) describe the withheld information to allow the Court and opposing parties to assess

whether privilege applies.  Fed. R. Civ. P. 45(e)(2)(A)(i)-(ii); *see also* Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii), 34(b)(2)(C), 34(c).  General assertions of privilege do not satisfy the requirements of Rule 45(e)(2).  *See Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995); *see also Relevant Grp., LLC v. Nourmand*, No. CV-19-5019, 2021 WL 9696765, at *4 (C.D. Cal. 2021) ("Cases in this Circuit and beyond consistently hold that a subpoenaed non-party must provide a privilege log when withholding responsive documents based on privilege.").

## II.    Analysis

As narrowed,[3] Plaintiff's ten subpoena requests fall into three categories.  (Doc. 2 at 5, 9-10, 15; Doc. 6 at 6-7, 76).  In Category 1,[4] Plaintiff seeks client files for Robert, OtterSec, Otter Audits, RC Security, and DANS (collectively the "Robert Chen Entities") "as kept in the ordinary course of Agasi's business," which may include contracts, engagement letters, work files, tax records, and other financial statements and records that Agasi "stores for its clients."  (Doc. 2 at 15, 35-36; Doc. 6 at 7-8).  In Category 2,[5] Plaintiff seeks emails concerning the Robert Chen Entities that can be discovered by searching Agasi's email records for Robert's email address or through keyword searches of "Robert Chen," "OtterSec," "Otter Audits," "RC Security," "Digital Asset Network."  (Doc. 2 at 35; Doc. 6 at 8, 82-83).  Finally, in Category 3,[6] Plaintiff seeks documents concerning Sam, his family, or his Estate and emails concerning the same that can be found through keyword searches for "Sam Chen" and "Li Fen Yao."  (Doc. 2 at 35; Doc. 6 at 7-8, 82-83).

In its initial objections,[7] Agasi asserted, generally, that the subpoena (a) sought documents or information otherwise available through the Maryland Action and (b) was

---

[3] Agasi argues that Plaintiff agreed to even further narrow these categories (*see* Doc. 5 at 2; Doc. 5-1 at 27-28), but Plaintiff seeks to enforce her interpretation of the subpoena's scope, not Agasi's (Doc. 6 at 6-7).
[4] Category 1 encompasses Requests 1, 4, 5, 6, 7, 8, 9, and 10, and part of Request 2, which concerns documents.  (Doc. 2 at 35-36).
[5] Category 2 includes the remainder of Request 2, which concerns communications.  (Doc. 2 at 35).
[6] Category 3 includes Request 3.  (Doc. 2 at 35).
[7] Agasi's objections were asserted under the Arizona Rules of Civil Procedure—as opposed to the Federal Rules of Civil Procedure which govern here.  (*See* Doc. 5-1 at 6-22).  Its first general objection was that the subpoena was improper because it was not issued by the state superior court in the county where compliance is required.  (*Id.* at 7).  Agasi has not

- 6 -

unduly burdensome because it was overbroad, duplicative, and irrelevant. (Doc. 5-1 at 7). Although Agasi labeled its other initial objections to each request as "specific," those objections simply reassert its general objections and broadly assert Arizona's statutory accountant-client privilege.[8] (*See id.* at 8-22). Indeed, Agasi's objections to each subpoena request use a set of five nearly identical paragraphs, copied and pasted from one request to the next, with only slight modifications in the second paragraph to reflect the language in the request. (*See id.*). As such, Agasi did not assert any objections with specificity as required by Rules 26, 34, or 45.[9] Fed. R. Civ. P. 26(b)(2), 26(b)(5)(A)(i)-(ii), 34(b)(1)(C), 34 (c), 45(e)(1)(D), 45(e)(2)(A)(i)-(ii).

Over four months after making these general objections, Agasi's counsel provided objections to each category of subpoena requests in an email to Plaintiff's counsel, asserting that (1) the Category 1 documents are privileged under Arizona's statutory accountant-client privilege; (2) the Category 2 documents could, and should already have been, obtained through discovery with parties in the Maryland Action; and (3) most of the Category 3 documents are a privileged part of OtterSec's client file and are tax documents of which Plaintiff already had copies. (Doc. 6 at 80).

For the reasons discussed below, each of Agasi's objections is dismissed, and Plaintiff's Motion to Compel is granted.

### A.    Relevance

As an initial matter, Plaintiff sufficiently explains the relevance of each Category to the Estate's claims in the Maryland Action.

---

maintained this objection. (*See* Doc. 5).

[8] Agasi's "specific objections" also mentioned privacy and confidentiality, but Agasi has not made any arguments in support of this objection. (Doc. 5-1 at 8-22; *see* Doc. 5).

[9] It is not clear that Agasi's failure to make objections with specificity does not constitute waiver of those objections. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)) (holding that Rule 33's waiver of objections provision—which states that, without good cause, a party waives any objection  not timely and specifically asserted—is equally applicable to Rule 34, despite Rule 34 not including identical language). Nonetheless, Plaintiff has not argued waiver of Agasi's relevance or undue burden objections, so the Court will analyze the parties' substantive arguments regarding those objections. The issue of waiver as applied to account-client privilege is discussed below.

First, Plaintiff correctly argues that the Category 1 documents are "relevant to the Estate's claims that Robert invalidly purchased OtterSec's assets and then transferred them to the" Successor Entities. (Doc. 2 at 13).   Discovery on the value and operations of the Robert Chen Entities during the few months of OtterSec's operation—from its formation, in February 2022, to September 2022, when Robert dissolved and sold its assets—would inform Plaintiff's breach of contract claim against Robert for his alleged violations of the Amended Operating Agreement.  *See* Md. Action, ECF No. 100 at 39-44.  For instance, the client files would contain information about the value of OtterSec's assets at the time of the sale to determine whether Robert's sale of OtterSec's assets were  below fair market value.  (Doc. 2 at 14).  Similarly, Category 1 documents and information from the period after the sale to the present would provide information about the distribution and present value of OtterSec's assets.  Through its breach of contract and accounting claims, the Estate asserts that it is entitled to both the value of those assets and information about those assets.[10]  (*See id.* at 3, 14; Doc. 6 at 6).

Similarly, Plaintiff argues that Categories 2 and 3 will reveal communications concerning Sam and the Robert Chen Entities, specifically, "OtterSec's dissolution, formation of the Successor Entities, and strategies Robert considered in dissolving OtterSec and completing the conflicted asset purchase." (Doc. 2 at 14).  Plaintiff is correct here too because, like Category 1, these communications may provide information about Robert's actions before, during, and after the dissolution of OtterSec and sale of its assets, lending insight to his alleged breach of the Amended Operating Agreement.  The narrowed email searches proposed by Plaintiff's counsel only require production of emails identified by searches for Robert's email address and by keyword searches for the names of the individuals and entities involved in Maryland Action.  (Doc. 6 at 82-83).  This limitation

[10] The District Court in the Maryland Action held that, according to Wyoming Statutes, the Estate is entitled "to an accounting of the transactions and affairs of Ottersec," and "to discovery" associated with her other claims for information "equivalent" to an accounting from Otter Audit and RC Security.  Md. Action, ECF No. 100 at 44-45.  Though that holding did not include the DANS, it indicates the relevance of Category 1 to the Maryland Action.

seems well "tailored to capture [communications] that will be relevant" to "matters at the heart of the underlying litigation." *Cf. Aquastar*, 2019 WL 250429, at *3 (finding that a keyword search for documents using keywords such as the names of products and individuals involved in a patent infringement case was proportional).

In sum, Plaintiff has adequately explained why production of documents and information from 2022 through the present day in Categories 1, 2, and 3 (as limited by Plaintiff's counsel's proposal during the meet-and-confer discussions) is relevant and proportional to the needs of litigation in the Maryland Action. Agasi's only response is a conclusory assertion that "Plaintiff has failed to carry her initial burden of clearly establishing the relevance of discovery." (Doc. 5 at 2 n.1). As such, Agasi has provided no reason for the Court to conclude that the documents sought are either irrelevant or disproportional to the matter in dispute.

### B.    Undue Burden

Agasi has failed to show that it would be unduly burdened or forced to take on significant expense by complying with the subpoena. Even affording Agasi the special consideration due to nonparties subject to a subpoena, the Court cannot find that Agasi is unduly burdened because Agasi has alleged no "specific facts which indicate the nature and extent of the burden." *Nationstar*, 316 F.R.D. at 334 (citation omitted).

As established above, Plaintiff's requests in each Category seek relevant documents and information that are important to her claims in the Maryland Action from a period of just over four years, from the client files of the Robert Chen Entities, and from email searches tailored to produce relevant results. Agasi argues that it should not be compelled to produce documents or information under Categories 2 and 3 because discovery is available in the Maryland Action for those categories.[11] (Doc. 5 at 8-10; Doc. 5-1 at 7). Plaintiff asserts, and Agasi does not contest, that Plaintiff attempted to seek this information from the parties to the Maryland Action. (Doc. 2 at 16; *see* Doc. 5 at 8-10). Rather, Agasi

---

[11] Tax and other financial records from OtterSec's client file are the only specific documents that Agasi claims have already been produced in the Maryland Action. (Doc. 5 at 10). But Agasi does not assert that it would be unduly burdened by compliance with the Category 1 requests for OtterSec's client file. (*See id.* at 5-10).

rests its objection on emails which have already been produced in the Maryland Action and on the potential production of further emails.  (Doc. 5 at 8).

While Agasi's objection does reflect courts' reluctance to require nonparties to produce documents or information that can be produced by a party, *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014), the mere fact of potential discovery or overlap in discovery in the Maryland Action does not exclude Agasi from compliance with the subpoena.  *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*, No. CV-19-05395, 2022 WL 36466, at *1 (D. Ariz. Jan. 4 2022).  Indeed, Agasi's allegation that Plaintiff "fails to mention any missing emails" (Doc. 5 at 8) is beside the point.  Plaintiff may seek the "same" discovery from Agasi that it sought from a party to the Maryland Action in pursuit of additional evidence or to identify omissions, particularly when the nonparty will not otherwise be unduly burdened in complying with the subpoena.  *Viacom Int'l Inc. v YouTube, Inc.*, No. 08-80129, 2008 WL 3876142, at *3-4 (N.D. Cal. Aug. 18, 2008) (citation omitted).

Here, Agasi's conclusory assertion of undue burden does not outweigh "the value of the information" to Plaintiff.  *Aquastar*, 2019 WL 250429, at *3 (quoting *Soto*, 282 F.R.D. at 504).  Agasi has not alleged any specific facts about the efforts it would have to take, the costs it would have to expend, or the volume of information it would have to parse to comply with the subpoena.  *Advanced Reimbursement*, 2022 WL 36466, at *1 (holding that a subpoenaed nonparty asserting this objection must "explain[] or show[] what burden would be associated with" compliance because "information of costs and burdens of such production lies exclusively within [its] knowledge").  As such, the Court cannot find undue burden "based solely on the argument that [Plaintiff] could have obtained the subpoenaed documents from the parties."  *Id.*

### C.    Accountant-Client Privilege

Agasi's remaining objection is that its production of information or documents in Category 1[12] is barred by accountant-client privilege under Arizona law.  (Doc. 5-1 at 8-

---

[12] Agasi also asserts that accountant-client privilege prevents compliance with the subpoena under Category 3, but again, only makes this assertion as to documents in the

22). Agasi asserts this privilege as to OtterSec and the Maryland Defendants.[13] (Doc. 5 at 5). Plaintiff challenges Agasi's assertion of privilege on two bases: (1) that no accountant-client privilege applies, and (2) that, even if a privilege did apply, it has been waived. (Doc. 2 at 8, 20-21; Doc. 6 at 10-14).

As an initial matter, the parties disagree on which state's privilege laws apply here. Agasi claims that Arizona law applies because Agasi is an Arizona accounting firm and because the forum for subpoena compliance is Arizona. (Doc. 5 at 5-7). In the alternative, Agasi argues that Maryland law—which also recognizes a statutory accountant-client privilege—applies as the forum where the Maryland Action is pending. (Doc. 5 at 7). Plaintiff argues that Washington, Wyoming, or South Dakota law—none of which recognize an accountant-client privilege—should apply. (Doc. 2 at 16-20; Doc. 6 at 10-14).

In a federal civil case, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. "Rule 501, however, does not tell us which state law the forum state should apply." *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987). In *Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1328 (9th Cir. 1995), a Ninth Circuit panel held that Rule 501 required it to apply Alaska privilege rules because "Alaska state law supplied the rule of decision." As such, the privilege rules of the state supplying the rule of decision in the Maryland Action will apply here. *Id.*

The District Court in the Maryland Action determined that two states supply the rules of decision in this case: Wyoming and Maryland.[14] Md. Action, ECF No. 100 at 14, 18, 44. Though either Wyoming or Maryland law could apply here, the Court need not decide which "law applies in this case because the result is the same under the law of both

_____

OtterSec client file (Doc. 5 at 10), which are more properly considered under Category 1.

[13] Agasi does not assert any privilege as to DANS, which is not its client. (Doc. 5 at 5 n.2).

[14] Wyoming supplies the rule of decision for Plaintiff's breach of fiduciary duty claim, breach of contract claim, and OtterSec accounting. Md. Action, ECF. No. 100 at 14, 44. Maryland supplies the rule of decision as to Plaintiff's fraud claim. *Id.* at 18. Because Plaintiff's claim for declaratory judgment and the remainder of the accounting claims rely on the substantive claims, both Wyoming and Maryland supply rules of decision. *See id.* at 44.

states." *KL Grp.*, 829 F.2d at 918.  In both states, the accountant-client privilege does not apply to prevent Agasi's disclosure of the Category 1 client files.

In Wyoming, Category 1 documents and information are not entitled to an accountant-client privilege because Wyoming does not recognize any such privilege.  *See* Wyo. Stat. § 1-12-101.  While Maryland, in contrast, does recognize an accountant-client privilege, Md. Code Cts. & Jud. Proc. § 9-110(b), the Maryland Defendants have waived any such privilege.

Maryland's privilege statute regulates the conduct of accountants, prohibiting any voluntary or compelled disclosure of "the contents of any communication or any information derived from the client without express permission by the client, by the personal representative of the client, or by the successor in interest of the client."  *Sears, Roebuck & Co. v. Gussin*, 714 A.2d 188, 193 (Md. App. 1998).  But the privilege is strictly construed, *id.* at 192, and "may be waived by permission of the client [or] by the client's conduct."  *BAA, PLC v. Acacia Mut. Life Ins. Co.*, 929 A.2d 1, 15 (Md. 2007).  Like other privileges, accountant-client privilege is waived when the privilege-holder "acts in a manner inconsistent with" that privilege, implicates a privileged subject matter, makes disclosures to a third party, or injections privileged materials into a lawsuit. *Sears, Roebuck & Co.*, 714 A.2d at 194 (collecting Maryland cases regarding various privileges waived by privilege-holder conduct) (citations omitted).  In other words, when a client[15] "ceases to treat a matter as [privileged], it loses its [privileged] character."  *Id.* at 195 (citation omitted).  Plaintiff bears the burden of establishing that Agasi's clients have waived the accountant-client privilege.  *Id.*

Regardless of Agasi's purported intent to keep client files "confidential and not . . . disclosed to third parties," the Maryland Defendants produced "overlapping documents" from the Robert Chen Entities in the underlying litigation.  (Doc. 5 at 7; Doc. 6 at 13).  Specifically,  "Robert  produced  financial  records,  tax  documents,  and  email

---

[15] An accountant's disclosure of privileged documents does not waive that privilege unless the accountant was given express permission by the client to disclose.  Md. Code Cts. & Jud. Proc. § 9-110(b).  As such, despite violating Rule 45, Agasi's failure to provide a privilege log or assert the privilege with any specificity cannot itself constitute a waiver.

communications with Agasi." (Doc. 2 at 10). Agasi itself notes that in the Maryland Action, the Maryland Defendants have produced or have agreed to produce "many of the same materials sought from" Agasi, providing specifically that the Maryland Defendants have provided "OtterSec 2022 Tax Returns; documents sufficient to identify OtterSec's customers; OtterSec bank account statements . . . through April 2024; OtterSec bank transaction statements through April 2024; OtterSec Profit and Loss 2022; OtterSec 1099 to David Chen for 2022," and "additional financial records relating to OtterSec." (Doc. 5 at 8, 10). Agasi's clients produced these documents "in the spirit of compromise," without any assertion of accountant-client privilege. (Doc. 5 at 7; Doc. 6 at 13).

In contrast, the privilege-holding party in *BAA* made "constant efforts to protect the confidential character" of its withheld documents. 929 A.3d at 16-17. The privilege holder in *BAA* made two disclosures: (1) a selective disclosure of related, non-privileged documents—referred to as "certain work papers"—during discovery; and (2) a disclosure of privileged materials to third parties outside of the underlying litigation for transactional, due diligence purposes under the strict confines of a confidentially agreement. *Id.* The *BAA* court found that none of the produced documents in the first disclosure were subject to the privilege and that the privilege-holder had taken affirmative steps to maintain the privilege over its withheld documents. *Id.* Moreover, the party asserting waiver provided only a "vague description" of the documents which were selectively disclosed, such that the court could not find waiver extending to the withheld materials. *Id.* Similarly, the court did not find waiver—despite the third-party disclosure—because the due diligence purpose of the disclosure meant that it fell within one of Maryland's statutory exceptions to waiver. *Id.* at 17 (citing Md. Code Cts. & Jud. Proc. § 9-110(c)).

Thus, where the *BAA* privilege-holders "never ceased to treat the withheld materials as privileged and did not disclose materials subject to the privilege," Plaintiff has established that the Maryland Defendants did cease to treat the withheld materials as privileged—by not asserting any such privilege in the Maryland Action—and did disclose materials that Agasi asserts are subject to the privilege, with specific examples of

documents provided by the Maryland Defendants that fall within Category 1. A privilege-holder's conduct—including voluntarily producing or testifying about specific privileged materials—"constitutes a waiver as to all other" materials "on the same subject matter." *Cf. Harrison v. State*, 345 A.2d 830, 839 (Md. App. 1975) (discussing subject matter waiver in the context of client testimony about communications covered by the attorney-client privilege); *Sears, Roebuck & Co.*, 714 A.2d at 194 (citing *Harrison* as an example of waiver principles also applicable to accountant-client privilege). Thus, regardless of Agasi's conclusory assertion of the accountant-client privilege, the Maryland Defendants—as the client-privilege-holders—have waived that privilege by their conduct in the Maryland Action by acting in a manner inconsistent with privilege over the Category 1 documents and information.

Accordingly, neither Wyoming nor Maryland law bar Agasi from complying with Plaintiff's Category 1 requests.

## CONCLUSION

Because Plaintiff has shown that the subpoena seeks relevant documents and information and because Agasi has not provided any basis on which the Court can bar its compliance,

**IT IS ORDERED** that Plaintiff's Motion to Compel (Doc. 1) is **GRANTED.** Agassi shall produce the subpoenaed documents to Plaintiff Yao within **14 days of the date of this order**.

Dated this 22nd day of May, 2026.

*S. Murray Snow*

_____
G. Murray Snow
Senior United States District Judge